SMITHBRIDGE, LLP
BY: Andrew M Smith, Esquire
Two Penn Center
1500 JFK Blvd, Suite 900
Philadelphia, PA 19102
(215) 564-LAW1
Andrew@Smithbridgellp.com
COUNSEL FOR PLAINTIFFS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JARET WRIGHT** : | |
| **Plaintiff,** : | |
| v. : | |
| : | |
| **SUNTRUST BANK, INC;** : | **Civil Action No:** |
| **SUNTRUST INVESTMENT SERVICES, INC.;** : | |
| **SUNTRUST MORTGAGE, INC.;** : | |
| **CSI CAPITAL MANAGEMENT;** : | |
| **TODD LAROCCA; and TAYLOR & FAUST** : | |
| : | |
| **Defendants.** : | |

## COMPLAINT, PRAYER FOR RELIEF AND JURY DEMAND

### INTRODUCTION

1.      Plaintiff Jaret Wright (hereafter, "Plaintiff") brings this action against Defendants SunTrust Bank, Inc, SunTrust Investment Services, Inc, SunTrust Mortgage, Inc, CSI Capital Management, Taylor & Faust and Todd LaRocca (collectively, "Defendants")

2.      The allegations herein are based upon personal knowledge, information, belief, and the continuing investigation of Plaintiff's counsel.  Many facts and documents related to Plaintiff's allegations are known and possessed only by Defendants or are exclusively within their control.  Substantial evidentiary support will therefore, be developed only after reasonable discovery.

3.      Defendant LaRocca was/is a registered financial advisor and/or representative, agent, employee, member, owner, partner, associate and/or shareholder of Defendants CSI and

SunTrust Bank at the relevant times material hereto and for the reasons set forth below each of said Defendants is liable for the conduct of LaRocca and others working with, for, or under LaRocca including the accounting/law firm of Taylor & Faust.

4.      Plaintiff is a client of financial advisor Todd LaRocca, who together with LaRocca's investment advisory companies (Defendants CSI and SunTrust Bank) and LaRocca's accountants/law firm at Taylor & Faust managed, controlled, monitored, maintained, handled, invested and consequently lost in excess of $7,500,000 of Plaintiff's assets through unsuitable, high risk, illiquid investments. Plaintiff seeks damages for losses incurred due to Defendants' misrepresentations, mismanagements, fraud, omissions, concealment, negligence, lack of supervision, breach of fiduciary responsibilities and other wrongful conduct.

## THE PARTIES
### Plaintiff Jaret Wright

5.      Jaret Wright is a world-class professional athlete who played Major League Baseball for the Cleveland Indians, San Diego Padres, Atlanta Braves, New York Yankees, and Baltimore Orioles. Todd LaRocca solicited Wright in 1997 when Wright was a member of the Cleveland Indians and LaRocca represented himself to be a financial advisor specializing in helping professional athletes, especially baseball players, keep and maintain their wealth.

6.      Defendant Todd LaRocca promoted himself as a financial advisor with conservative investment strategies specializing in the representation of Major League Baseball Players and approved by the MLB Player's association. (Exhibit A). In fact, LaRocca provided Wright and his mother with literature boasting that his and CSI's clients get portfolios that are "carefully structured according to…financial needs and long-term financial prospects" and their clients' "best interests are [their] only objective." The document went as far as degrading "most financial advisors and investment counselors" as being "brokers" and "salesmen" looking to line their own pockets with commissions and putting players into "ill-conceived get rich quick schemes" that they counsel their players to avoid. (Exhibit B)

7.      LaRocca bragged to Wright and made representations to him about being the investment advisor of at least thirty-six (36) other professional athletes including Major League Baseball ("MLB"), N.F.L. and National Basketball Association ("NBA") players and he went as far as to supply him with a client list (Exhibit C) which was commonly referred to in the financial industry as LaRocca's "roster" of player clients. LaRocca specifically used these

athletes' names, status and personas to solicit and secure the trust of other professional athletes, like Jaret Wright.

### Defendants Todd LaRocca, SunTrust Banks, SunTrust Investment, and CSI

8.      Defendant TODD LAROCCA is a resident of San Diego, California and holds himself out to the general public and more specifically to professional athletes, as a licensed, registered and insured financial advisor.  Based upon initial investigation, LaRocca was at all times material hereto a member, shareholder, principal, owner, partner, employee, salesman, servant, agent, broker, representative and/or independent contractor of Defendants SunTrust and CSI.

9.      Defendant CSI CAPITAL MANAGEMENT, INC (hereinafter "CSI"), is a duly licensed and registered investment advisory firm and wealth management company specializing in the investment and asset management of professional athletes, with its primary office address located at 600 California Street, 18th Floor, San Francisco, CA 94108.

10.     Defendant TAYLOR & FAUST, is a professional corporation, attorneys at law and/or an accounting firm holding themselves out as "certified specialist" in taxation law with a special expertise in dealing with professional athletes with offices located at Telesis Tower, Suite 2525, One Montgomery Street, San Francisco, California, 94104. Defendant CSI and LaRocca boasted that they "hired a Harvard Law School alum" and notably included the resume of Leland Faust as part of its solicitation and representation of Jaret Wright. (Exhibit D)

11.     By way of letter dated November 9, 2009 CSI advised Mr. Wright that CSI, LaRocca and Faust had signed an asset purchase agreement with Defendant SUNTRUST BANK to make a "strategic acquisition of the division of [CSI] handled by Todd LaRocca" and that "Todd will continue to be directly responsible for [his] account." (Exhibit E)

12.     Defendant SUNTRUST BANK purchased Defendant CSI and executed a multi-year employment contract with LaRocca, which included the transfer of Plaintiff's accounts. Defendant SUNTRUST and its Sports & Entertainment Specialty Group are headquartered at 303 Peachtree Street, N.E., Atlanta, Georgia 30302.

13.     Defendant SunTrust and its subsidiaries and/or affiliates are registered broker/dealers and registered investment advisors and CSI is similarly a registered investment advisor under the Investment Advisor Act and together, all the named Defendants have served as

Plaintiff's financial advisors and financial managers during all times relevant to the claims contained herein.

14.     Plaintiff Wright and Defendants LaRocca, CSI, Taylor & Faust and SunTrust Bank operated under an "Agreement-Financial Services" dated 11/1/2003 which does not contain *any arbitration clauses* or *jurisdictional requirements or limitations*. (Exhibit F)

## JURISDICTION AND VENUE

15.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, more specifically Section 27 of the Securities Exchange Act, 15 U.S.C. §78(a) *et seq.*; 15 U.S.C. §78j(b); Rule 10b-5 (17 C.F.R. §240.10b-5) and 15 U.S.C. §78t(a).  In connection with the Defendants' acts, conduct and other wrongdoings complained of herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce and/or the mails.

16.     Venue is suitable in this U.S District Court pursuant to 15 U.S.C. §78aa and 28 U.S.C. §1391 because, among other things, (i) Defendants transact business in this judicial District; (ii) Defendants solicit and engage professional athletes who perform in this District and transact business within this District; (iii) this lawsuit is similar to and may be related to litigation in this district Feeley, et al v. SunTrust and Terry v. SunTrust[1] and (iv) Defendants otherwise subject themselves to the jurisdiction of this Court.  This Court is equipped to handle this litigation and can exercise pendent jurisdiction over any State law claims.

## DEFENDANTS' ROLES AND SCHEME

17.     At all times material hereto, Defendants were able to create, control, disseminate, manage, represent and conceal all the material facts, documentation and information concerning Plaintiff's assets, investments, values, portfolio management, net worth and all real estate decisions/transactions for Mr. Wright including those for investment purposes and those used as his personal residence. Each Defendant had *"the authority and discretion to supervise and direct the investments of all of [Wright's] accounts"*[2] as well as additional, authority, discretion and control by way of durable and/or limited powers of attorney and each Defendant had access to undisclosed information regarding Plaintiff's investments. Defendants also had the

---

[1] Both of these cases are currently stayed, as the matters have been referred to AAA arbitration by Order of Court.
[2] Pursuant to the CSI Agreement-Financial Services dated 11/1/2003; attached as Exhibit F

authority/ability to prevent or correct disseminations of proper, truthful and accurate information to Plaintiff.

18.    Defendants, in their position, each had a fiduciary duty and obligation to promptly inform and disseminate accurate and truthful information to Mr. Wright concerning his investments and his net worth.  Defendants were in a position to correct any misleading omissions of fact regarding the financial condition, performance, operations, financial statements, and investments that Defendants made on the Plaintiff's behalf. Despite this affirmative duty placed upon each Defendant, each knowingly and intentionally made, or participated in making or reviewed misleading statements and omissions of material fact in order to carry out investment transactions that were not in the Plaintiff's best interests and were not suitable given the Plaintiff's risk tolerance, net worth and income stream.

19.    The Defendants are each liable for any material false statements or omissions pleaded herein, as the statements are each "published" information for which they are collectively responsible.

20.    Plaintiff is informed and believes, and thereon alleges that, at all relevant times, each Defendant was the principal, agent, employee, partner, associate, joint venture, successor-in-interest, co-conspirator and/or acting in concert with, and under the direction and control of, each remaining Defendant, and in doing the things alleged in this complaint, each Defendant was acting within the course and scope of these relationships.

## FACTUAL AVERMENTS

21.    Beginning in November, 1998 and continuing thereafter Defendants LaRocca and CSI acted as the investment advisor and money manager of Plaintiff with LaRocca being directly responsible for Mr. Wright.

22.    Plaintiff's relationship with Defendant LaRocca began when his agents at Reich, Katz and Landis Baseball Group referred him to Defendant LaRocca, when LaRocca was an employee of Defendant CSI.  Initially, Defendant LaRocca and Plaintiff met and Plaintiff signed numerous documents engaging Defendant LaRocca as his financial advisor, CSI and Taylor & Faust.

23.    From that point on, Defendant LaRocca slowly began to control, manage, invest and exercise discretionary authority over all of Plaintiff's assets and finances generated from his professional baseball career.

24.    Defendant LaRocca, at all times relevant to this Complaint, was registered as an investment advisor working under the supervision and control of Defendants CSI and SunTrust Bank or their subsidiaries and affiliates each of which are broker-dealers registered with the United States Securities and Exchange Commission and were authorized to conduct business in the United States.

25.    From the inception of Defendant LaRocca's representation of Plaintiff, Plaintiff had specific conversations with LaRocca about employing a conservative investment strategy, with a liquid portfolio of assets aimed at preserving the money that Plaintiff had and would accumulate during Plaintiff's professional athletic career. LaRocca expressly understood and acknowledge the short and unsecure nature of income that accompanies playing professional sports and so he assured Plaintiff he was a very conservative, low risk taking investment advisor.

26.    Defendant LaRocca solicited the assets, trust and confidence of Plaintiff, by specifically representing to Plaintiff that he was a "licensed and registered financial advisor," who represented significant professional athletes in multiple sports; and he employed a very conservative, safe and liquid investment strategy aimed at asset growth with little to no risk. LaRocca specifically told Plaintiff that Plaintiff could, at any time, get out of the investments LaRocca placed Plaintiff in because he said every investment he placed Plaintiff in was a very safe, liquid asset. LaRocca never discussed with Wright investing in real estate equity funds that could not be liquidated, but without his knowledge, understanding or consent placed Wright in significant real estate equity funds and real estate alternative, high risk investments for which LaRocca received commissions, kick-backs, fringe benefits and even real property.

27.    Contrary to LaRocca's express representations, he also placed Plaintiff in high-risk, alternative investments which were Ponzi schemes or other fraudulent investments run, managed, controlled, operated and/or created by individuals with whom LaRocca had a personal relationship, a vested interest and kick-back agreements. These investments were unsuitable and illiquid and LaRocca had some financial interest and relationship with each investment that was never disclosed to Plaintiff.

28.    LaRocca and Defendants CSI and SunTrust each failed to advise Plaintiff that LaRocca, improperly utilizing his discretionary authority over Plaintiff's assets, would materially change Plaintiff's stated and known investment strategies, would misrepresent Wright's net worth, asset values and expenses and would concentrate a majority of the Plaintiff's investment

portfolio in unsuitable, privately held, unsecured, illiquid securities which LaRocca had a financial and personal interest in.

29.      LaRocca knowingly made false and material misrepresentations to Plaintiff before the date LaRocca placed Plaintiff into certain high-risk, illiquid investments, by stating he would take Plaintiff's money and invest it in safe investments that would provide a steady stream of income to Plaintiff throughout Plaintiff's life.

30.      In fact, LaRocca at various times throughout his relationship with Plaintiff, sold, merged or transferred Plaintiff's assets among the various Defendants CSI and SunTrust and in doing so the Defendants made express and affirmative representations to Plaintiff about their financial safety and well-being, Defendants' expertise in handling wealth management for professional athletes and how the Defendants "specialize" in the Sports and Entertainment field.

31.      Contrary to statements and representations such as these Defendant LaRocca did not invest Plaintiffs' money in safe investments and did not provide high-quality wealth management services, but rather misappropriated his assets and income for LaRocca's personal and pecuniary gain; invested Plaintiff's money in unsuitable, illiquid, high risk, alternative investments for friends of LaRocca, who then in exchange paid LaRocca kick-backs, commissions, gifts and/or provided LaRocca with fringe benefits or other pecuniary/monetary benefits like real estate and phony mortgages.  LaRocca under the supervision of CSI, Taylor & Faust and SunTrust invested Plaintiff's money in these unsuitable investments, Ponzi schemes and private equity funds, controlled and operated by LaRocca's friends and colleagues (such as Jason Sugarman and Matt Jennings) and/or transferred and/or commingled Plaintiff's money among other investors and athletes whom LaRocca represented to prevent the discovery of LaRocca's frauds, schemes and poor investment strategy as well as Plaintiff's personal financial losses.

32.      LaRocca never advised Plaintiff of his relationship with these people and entities, never disclosed that he and Defendants received substantial commissions and kick-backs for investing Plaintiff's money in these investments and Defendants were able to manipulate the actual dissemination of information concerning these investments, their holdings and the actual worth so that Plaintiff could not discover the truth about Plaintiff's investments, Plaintiff's portfolio's actual value or Defendants' investment strategies for Plaintiff's assets. LaRocca and

Defendants created and supplied inaccurate and misrepresented net worth statements to Wright so as to avoid detection of their investment strategies and improper self-dealing.

33.     Defendants were each negligent and failed in their independent fiduciary duties to Plaintiff by allowing LaRocca to invest significant percentages of his assets and income into unsuitable and/or high-risk and illiquid, alternative investments and Ponzi schemes, some of which LaRocca and Defendants had personal relationships with and/or were actually registered "brokers" for said investments.

34.     Defendants never requested or required Plaintiff to complete a client profile or investment objective statement; Defendants never developed investment program for Plaintiff; Defendants failed to define any of Plaintiff's financial risks and Defendants failed to follow industry standards in assessing Plaintiff's risk tolerances and in setting up a proper investment portfolio for Plaintiff based upon Plaintiff's age, income, assets and long term financial needs.

35.     In 2012 Plaintiff was considering an investment present to him by an outside third party who was not associated with Defendants and Wright did not present this to Defendants for their review. As part of this third party's due diligence in considering Wright as a potential investor, they required a review of his investment account with Charles Schwab to determine his net worth, review his personal real estate holdings and annual income to see if Wright qualified for the investment.  It was at this time that Plaintiff was advised that many of his largest investments recommended, placed, managed and controlled by Defendants were essentially worthless based on their analysis. The actions and conduct of Defendant LaRocca and their various Defendant Companies including CSI and SunTrust Bank constituted active and/or fraudulent concealment of information and documentation that prevented Plaintiff from knowing or discovering the wrongs being committed against him and therefore equitably tolled any applicable statute of limitations for any Federal or State law claims set forth herein.

36.     Plaintiff was not aware and could not discover the actions of Defendant LaRocca the various Defendants who employed and supervised him until the independent review of his investment account statements, net worth statements and personal real estate holdings for numerous reasons. First, Defendants possessed and controlled all the information and documentation necessary for Plaintiff to discover their improper conduct.  Second, all of Plaintiff's financial records were sent to and remained in the sole and exclusive possession of Defendant LaRocca during his representation of Plaintiff.  Third, the nature of the fraudulent

scheme that Defendant LaRocca conducted did not lend itself to discovery until something outside Defendant's control would occur or become known. Fourth, Plaintiff was unable to gather and audit all of his financial information because of the level of control LaRocca exercised over his accounts which included LaRocca and CSI requiring Wright use their accounting/law firm, Taylor & Faust which they expressly controlled. And Fifth, Wright was only able to confirm many of the suspicions about Defendants' acts after he received a copy of an anonymous letter, ***dated August 17, 2012***, addressed to a Philadelphia attorney, outlining many of the schemes and conduct of LaRocca.  (Exhibit G)

37.     Because LaRocca was a registered representative, agent, advisor, owner, partner, member and/or employee of Defendants CSI and SunTrust Bank, each employer/Defendant had a duty to supervise, monitor, audit, control and prevent the conduct of LaRocca and his team which occurred here.  Each Defendant violated their fiduciary duties to Plaintiff by failing to properly supervise, oversee, audit, investigate, review, monitor and control LaRocca's conduct outlined herein. And said Defendants failed to advise Wright or take any remedial action despite their duties and despite being apprised of LaRocca's alleged conduct via the anonymous letter, which was provided to Defendant SunTrust in the summer of 2012.

38.     Plaintiff is now informed and believes that Defendants overvalued Plaintiff's investments and asset portfolio; failed to disclose the high-risk and/or illiquid nature of these investments to Plaintiff; disseminated false and misleading portfolio statements and asset information; made assurances to Plaintiff as to the security and safety of these alternative investments by insisting that he/they too had money "in the game" and Defendants misrepresented the value and security of these alternative investments to Plaintiff to dismiss and dispel any notion that the investments were abnormally volatile, risky, unsuitable and/or illiquid.

39.     Defendants circulated copies of subscription agreements and subscription booklets and other documents to Plaintiff which set forth misleading statements due to the omissions of material facts and true nature of the investment.

40.     If Defendants CSI and SunTrust had properly supervised, controlled, monitored or audited LaRocca, LaRocca would not have been able to perpetrate his fraudulent schemes and improper conduct, Plaintiff would not have remained in these alternative investments, Plaintiff would have known of the significant risks associated with the investments and Defendants could

have and would have prevented Plaintiff from losing millions of dollars of money that LaRocca had placed in these alternative investments.

41.     Defendants' failure to properly supervise LaRocca included numerous red flags which should be considered notice to Defendants of LaRocca's actions, including:

a.     CSI and SunTrust realized that LaRocca never had Plaintiff complete investment profiles, risk tolerance questionnaire or other industry standard investment profiles;

b.     CSI and SunTrust knowing and allowing LaRocca to ignore industry standard document retention systems and requirements;

c.     Allowing LaRocca to operate without having developed or defined written investment objectives for Plaintiff.

### The "Interested" Transactions and Investment Advisors' Act of 1940

42.     Defendants' transactions, initiated on behalf of the Plaintiff were "interested," self-dealing transactions, requiring consent by investors under the Investment Advisors Act of 1940. In these transactions, Defendants knowingly acted as principals in selling investment securities without proper disclosure or informed consent of Plaintiff, their client, as required by section 206(3) of the Investment Advisors Act of 1940.  Defendants were subject to said statute and regulations such as 17 CFR Section275.206(3)-(2) and SEC Release No. IA-1732, which require (i) a written consent prospectively authorizing the completion of such self-dealing transactions ("agency cross transactions for an advisory client"), (ii) after *full disclosure* including pricing and "best price" to enable the client to make an *informed decision* to consent to the transaction, with (iii) the Investment Advisor and affiliated parties consistently acting in the best interests of the client. Defendants failed to obtain the required informed consent, or any consent, to their scheme.  By this failure to obtain investors' consent, Defendants knowingly defrauded Plaintiff.

43.     Upon information and belief LaRocca placed Plaintiff into alternative investments and then allowed said alternative investment companies to act as Plaintiff's broker-dealer for Plaintiff's investment of money into subsequent alternative investments.

### The Defendants Failure to Seek Approval of the Transactions

44.     On information and belief, based on Defendants' access to Portfolio records, confidential information and knowledge of current market conditions, Defendants failed to seek

any adequate, informed consent from Plaintiff for the alternative investments because Defendants knew the transactions were unsuitable or inconsistent with Plaintiff's risk tolerance and investment strategy.

45.     Similarly, Defendants also failed to make any effort to *directly* disclose the terms of the self-dealing transactions to Plaintiff.

### Undisclosed Amounts Required by the Transactions

46.     As Plaintiff continues to investigate Plaintiff has come to learn, the Defendants were paid undisclosed and unanticipated commission amounts on account of Plaintiff's investments.

### COUNT I:

### Section 10(b) of the Securities Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

47.     Plaintiff repeats and re-alleges each allegation set forth herein.

48.     Defendants violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. Section 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. Section 240.10b-5, in that they:

    a.  Employed devices, schemes, and artifices to defraud;

    b.  Made untrue statements of material facts or omitted material facts which, in light of the circumstances, needed to be disclosed in order to make the statements made not misleading; and

    c.  Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Plaintiff in connection with their investment decisions.

49.     As alleged above, Defendants, by and through their agents and representatives, intentionally, carelessly and/or recklessly misrepresented and omitted material facts in connection with the sale of securities and other investments to Plaintiff.

50.     More specifically, Defendants' misrepresentations and omissions were intended to deceive and did deceive Plaintiff, for the purpose of causing the Plaintiff to invest in unsuitable investments as well as high-risk and/or illiquid "alternative investments" that did not match Plaintiff's risk tolerance.  For instance, Plaintiff's funds were contributed to various known Ponzi-schemes, including MKA and possibly other equity funds connected to Jason Sugarman, the value of which is essentially zero.

51.     At all times material hereto, the Defendants failed to make disclosures to the Plaintiff, including those necessitated by Securities Law and the usual custom of the financial community, and the Defendants failed to obtain the informed consent required for certain self-interested and self-dealing transactions and Defendants utilized and controlled Taylor & Faust as part of their schemes.

52.     Each Defendant owed Plaintiff fiduciary duties including a duty to avoid misrepresentations and omission of material facts regarding his investments under Section 10(b) of the Securities Act of 1934 and Rule 10b-5 promulgated thereunder.  Despite this and other duties, the Defendants made misrepresentations and omissions knowingly, with the intent to deceive and defraud Plaintiff, and with reckless disregard for the truth and materiality thereof, for the purpose of inducing Plaintiff to invest in unsuitable and/or illiquid investments so that the Defendants could earn lucrative commissions and fulfill other self-serving financial objectives.

53.     Plaintiff reasonably relied on Defendants' representations, in light of the Defendants' reported reputation in the investment community, licensures, legal licenses, tax certification, literature, list of other professional athletes and based on the oral and written representations LaRocca made about his expertise and the safety and security of Wright's investments.

54.     Unbeknownst to the Plaintiff at all times materially hereto, the investments recommended by the Defendants were unsuitable, illiquid and/or primarily served to benefit the Defendants' interests at the expense of Plaintiff's interest, in contravention of Section 10(b) of the Exchange Act and Rule 10b-5.

55.     As a direct, proximate, and foreseeable consequence of the Defendants' misrepresentations, nondisclosures, and omissions, Plaintiff invested in unsuitable and illiquid alternative investments that were being promoted by the Defendants, which caused Plaintiff to suffer extensive monetary damage and loss due to the instant diminution in the value of the investments, the illiquidity of said investments which eventually resulted in their complete loss; the unreasonable management fees, financial service fees, commissions, tax fees and legal fees extracted by the Defendants during the relevant time period, and the self-dealing nature of the investment.  Plaintiff's financial loss was thereafter exacerbated by the Defendants' active concealment of the initial diminution in the value of Plaintiff's capital contributions as well as Defendants' lack of supervision and oversight of these investments resulted in Plaintiff's

continued investment in these unsuitable and/or alternative investments and resulted in almost a complete monetary loss of Plaintiff's entire investments.

56.     The quantification of Plaintiff's aforesaid damages and losses shall be proven at trial.

## COUNT II

### Violation of Section 20(a) of the Securities Exchange Act Against Defendants SunTrust CSI Capital Management and Taylor & Faust

57.     Plaintiff repeats and re-alleges each allegation set forth herein.

58.     Defendants SunTrust, CSI Capital Management and Taylor & Faust exercised control over Defendant LaRocca's operations as a registered representative.

59.     Defendant LaRocca is an individual liable under Section 10(b) of the Exchange Act as specified in Count I.

60.     Defendants SunTrust, CSI Capital Management and Taylor & Faust had the power and authority to control Defendant LaRocca with respect to the wrongful conduct complained of herein and failed to do so.

61.     By reason of Defendants SunTrust, CSI Capital Management, Taylor & Faust and LaRocca's conduct, each are jointly and severally liable pursuant to Section 20(a) of the Securities Exchange Act for damages specified in and arising from Count I, above.

## COUNT III

### Rescission under Securities Exchange Act of 1934, Section 29(b) Against All Defendants

62.     Plaintiff repeats and re-alleges each allegation set forth herein.

63.     Plaintiff entered into contracts with Defendants directly and indirectly upon signing their respective Financial Services Agreements and investment documents, such as subscription agreements and PPMs.

64.     Each such contract entered into by Plaintiff was made in violation of Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder, due to the misrepresentations and omissions of material facts as hereinabove alleged.  Furthermore, each such contract has involved violations of said Section 10(b) and Rule 10b-5

65.     Section 29(b) of the Securities Exchange Act of 1934 provides that any such contract (i) made in violation of, or (ii) involving performance thereof that violates, Section

10(b) or Rule 10b-5, shall be void as to any person who, in violation thereof, shall have made or engaged in the performance of any such contract.

66.     None of the contracts entered into by Plaintiff are executory, but rather have been performed in full by the Plaintiff through Plaintiff's contribution of capital and payment of management fees and commissions to Defendants.

67.     Rescission and restitution of funds invested is the appropriate remedy because Defendants' fraud was not collateral to, but rather of central materiality to Plaintiff, who invested in the alternative investments.

68.     Rescission and restitution of funds invested is also appropriate because the equities balance much more strongly in favor of Plaintiff, who is primarily or exclusively nonprofessional, individual investor who invested their personal savings and now wish to have the security of their savings attended to by persons who did not defraud him. There is no inequity to Defendants, because Defendants knowingly undertook a fraudulent scheme to further their own interests.

## COUNT IV

### Joint and Several Liability as LaRocca's Principal

69.     Plaintiff repeats and re-alleges each allegation of set for herein

70.     Defendants CSI and SunTrust bank are liable for the conduct of LaRocca described in this Complaint under the Doctrine of Respondeat Superior or vicarious liability because as a registered representative and, on information and belief based on FINRA records, registered principal, LaRocca was an agent of Defendants CSI and SunTrust Bank. Furthermore, based on said FINRA records, LaRocca was actually an employee of said Defendants.  The conduct herein described fell within the scope of his authority as an agent or within the scope of his employment because:

> a.  The acts and omissions arose from acts of LaRocca involving the sale of securities and giving financial advice and services and are the types of acts that LaRocca was engaged or employed to do on behalf of said Defendants.

> b.  The improper conduct and/or fraud arose from acts done substantially within the authorized time and place for LaRocca to perform his duties on behalf of said Defendants for Plaintiff, because (i) LaRocca operated offices which were the branch or principal offices of Defendants;    (ii) the fraudulent misrepresentations complained of occurred through the mail, phone or  internet from the offices that LaRocca worked out of; (iii) LaRocca maintained his files and paperwork at the

offices of said Defendants; and (iv) LaRocca controlled the accounting/legal firm of Taylor & Faust which contracted with Plaintiff through his financial services agreement

c.  The fraudulent acts, breaches and improper conduct were committed by LaRocca with at least the partial intention of furthering the financial and business interests of Defendants CSI and SunTrust.  It was announced and made public that SunTrust Bank had purchased CSI for the purpose of increasing its Sports and Entertainment Specialty Group.

d.  Defendant SunTrust Bank performed a due diligence analysis of LaRocca's business and client base along with the Plaintiff's assets prior to acquiring LaRocca's interests in CSI, such that SunTrust knew or should have known about LaRocca's actions, misrepresentations, lack of documentation and paperwork, improper document retention system, lack of investment strategies and portfolios for Plaintiff as well as the investments LaRocca had placed Plaintiff in.

e.  Defendants SunTrust and its due diligence team was presented with multiple "red flags" concerning LaRocca and CSI but SunTrust and its Board ignored same instead electing to proceed with the acquisition because SunTrust believed Wright and other professional athletes presented SunTrust with significant collateral financial opportunities like commissions, management fees, mortgages and insurance sales that, in their eyes, outweighed the risks involved in acquiring LaRocca's business.

71.     Plaintiff may recover from said Defendants punitive damages arising from the acts, omissions, misrepresentations and fraud of LaRocca, CSI, Faust & Taylor and SunTrust because all Plaintiff's financial transactions were performed by LaRocca in furtherance of Defendants' business and within the scope of LaRocca's employment with said Defendants and despite multiple "red flags" which were identified during the due diligence review of LaRocca and CSI prior to acquisition.

72.     The quantification of Plaintiff's aforesaid damages and losses shall be proven at trial.

## COUNT V
### Bad Faith Breaches of Fiduciary Duty under Applicable State Laws
### Against All Defendants

73.     Plaintiff repeats and re-alleges each allegation set forth herein.

74.     Each of the Defendants, in their capacities alleged herein, owed fiduciary duties of loyalty, care, and good faith to Plaintiff.

75.     The fiduciary duties of loyalty, care and good faith owed by Defendants to Plaintiff required Defendants to:

    a.     Make full and timely disclosure of all material facts pertaining to Plaintiff's investments;

    b.     Obtain Plaintiff's informed consent prior to the investment transactions undertaken by Defendants as Plaintiff's advisor and principal manager.

    c.     Adequately diversify Plaintiff's investments so as to insulate the Plaintiff from an unreasonable amount of risk and to place him in suitable investments.

76.     In making alternative "high-risk" investments that were directly adverse Plaintiff's interests, and committing the actions and omissions alleged hereinabove, both prior to and after Plaintiff had invested in same, the Defendants breached their fiduciary duties to Plaintiff.

77.     Furthermore, the Defendants failure to disclose the self-dealing nature of the transactions deprived the Plaintiff of the opportunity to review any conflicts of interests that may have existed and in doing so, the Defendants breached their fiduciary duties of loyalty and care to the Plaintiff.

78.     The above-alleged breaches of fiduciary duties were undertaken and committed by Defendants intentionally and in bad faith, by willful misconduct, intentional fraud and by gross negligence, and in knowing disregard of Plaintiff's rights.

79.     A such, the above-alleged breaches of fiduciary duties violate Defendants' duties under the applicable State common law over which the Court may exercise pendent jurisdiction.

80.     As a direct and proximate result of all Defendants' breaches, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VI
### Fraudulent Misrepresentation Against All Defendants

81.     Plaintiff repeats and re-alleges each allegation set forth herein.

82.     Defendants represented to Plaintiff that, among other things, they would act in the best interests of the Plaintiff in making investment decisions, and that the Plaintiff's investment strategy would be one involving conservative investments to maximize returns while protecting their principal investment.

83.     Additionally, Defendants represented that they would conduct frequent and timely due diligence in order to optimize the return on Plaintiff's investments and to protect Plaintiff from substantial volatility in the investments.

84.     The Defendants had discretionary authority to invest on Plaintiff's behalf and Defendants were responsible for or involved in the drafting and/or review and approval of investments.  As Plaintiff's investment managers, Defendants also had a fiduciary duty to refrain from making fraudulent statements and to rectify any and all material misrepresentations and omissions once they became apparent.

85.     The Defendants' representations were false.  Specifically, Defendants refrained from the record keeping and due-diligence that was custom within the investment community and the Defendants continued to perpetuate investments in vehicles that were "high-risk" and converse to Defendant's representations that the Plaintiff's principal would be liquid and protected.

86.     The Defendants made the representations with knowledge of their falsity, reckless disregard for their truth, or without reasonable grounds for believing the representations to be true when they were made.

87.     The Defendants intended that Plaintiff would rely on the representations in deciding whether to invest in said alternative investments.

88.     Plaintiff justifiably relied on the Defendants' representations and it was not otherwise apparent that Defendants' assertions were false.

89.     Defendant's misrepresentations caused the Plaintiff to invest with Defendants and to refrain from withdrawing their capital investments when it was immediately apparent that the investments would continue to decline in value.

90.     Plaintiff suffered financial harm due the immediate diminution of the value of their investments and from Defendants' self-dealing transactions without disclosure of material terms or obtaining informed consents therefor.

91.     Plaintiff's reliance on the Defendants' representations was reasonable and justifiable, and was a substantial factor in causing their harm, as the representations contributed to the information available to Plaintiff at the time they decided to invest in the Partnerships.

92.     As a direct and proximate result of all Defendants' actions Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VIII

### Willful Breach of Covenant of Good Faith and Fair Dealing Against All Defendants

93.     Plaintiff repeats and re-alleges each allegation set forth herein.

94.     The contractual relationship between Plaintiff and Defendants included an implied covenant of good faith and fair dealing, which requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract.  A breach of the covenant of good faith and fair dealing may occur even without violating an express term of the contract.

95.     Defendants violated the implied covenant of good faith and fair dealing, where Defendants made investments without obtaining Plaintiff's consent and without adequate disclosure.

96.     Defendants' actions were undertaken in bad faith, for the sole purpose of benefiting the Defendants at Plaintiff's expense.  In effect, the Defendants' conduct induced the Plaintiff to enter into a contract that would allow Defendant's to purchase investment vehicles that were substantially over-valued, but would adequately serve the Defendants' own financial purposes and self-dealing motivations.

97.     Defendants' conduct was done in bad faith, by willful misconduct, fraud and gross negligence, and deprived the Plaintiff of a number of bargained-for benefits under their contracts with the Defendants, and therefore breached the duty of good faith and fair dealing.

98.     As a direct and proximate result of all Defendants' actions Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT IX
### Negligence Against All Defendants

99.     Plaintiff repeats and re-alleges each allegation set forth herein.

100.    The Defendants owed Plaintiff a duty to act with due care in carrying out any transactions on behalf of the Plaintiff and/or in identifying, sourcing, negotiating, structuring, analyzing and effectuating any investments for the benefit of the Plaintiff. The Defendants also owed Plaintiff a duty to act with due care in evaluating and managing the assets of the Plaintiff. Additionally, Defendants owed Plaintiff a duty to exercise reasonable care in disclosing the material terms of any transactions engaged in on behalf of the Plaintiff within a reasonable

period of time, and to correct in an expedient manner any representations regarding such transactions that may have been misleading to the Plaintiff.

101.   In identifying, analyzing, negotiating, structuring, approving and making the investments, and in failing to disclose the material terms of those transactions in a reasonably expedient manner thereafter, and failing to correct misleading representations regarding the alternative investments and the management and investment objectives of the Plaintiff in general, Defendants breached their duties of care owed to the Plaintiff.

102.   As a direct and proximate result of the Defendants' negligence, Plaintiff suffered harm in the amount of Plaintiff's proportionate share of the millions of dollars in overpayments and losses on investments, as well as management fees and other charges paid to the Defendants during the period of time that the Defendants acted negligently and breached the numerous duties owed to Plaintiff.

103.   The quantification of Plaintiff's losses and damages shall be proven at trial.

## COUNT X
### Negligent Supervision/Training Against Defendants SunTrust and CSI Capital Management

104.   Plaintiff repeats and re-alleges each allegation set forth herein.

105.   Defendants SunTrust and CSI Capital Management had a duty to supervise their employees, including Defendant LaRocca, and to ensure that their employees undertook proper due diligence and made any and all requisite disclosures, particularly concerning the high-risk alternative investments its employees were promoting to the Plaintiff.

106.   Defendants SunTrust and CSI Capital Management also had a duty to investigate employees that failed to make proper disclosures or keep proper records and to remediate any of their employees' improper and/or fraudulent conduct once they became aware of such conduct.

107.   On information and belief, Defendants SunTrust and CSI Capital Management breached that duty by failing to provide the necessary supervision and/or training.  Specifically, SunTrust and CSI Capital Management failed to require its employees to provide complete disclosure and in doing so, the Defendants ratified their employees' decisions to withhold pertinent financial information that would have otherwise informed the Plaintiff of the rapid deterioration of their capital contributions.

108.    As a direct and proximate result of Defendants SunTrust and CSI Capital Management's breach of their duty to supervise their employees, Plaintiff suffered financial harm when Defendant Crafton failed to provide the necessary disclosures and failed to refrain from fraudulent, self-interested, and self-serving conduct.

109.    The quantification of Plaintiff's losses and damages shall be proven at trial.

## COUNT XI
### Negligent Hiring/Retention Against Defendants SunTrust

110.    Plaintiff repeats and re-alleges each allegation set forth herein.

111.    Defendant SunTrust owed a duty to the Plaintiff and other investors to assemble an investment team that provided investment services that were transparent, based on truth rather than concealment, and were otherwise non-fraudulent in nature.

112.    On information and belief, Defendant SunTrust breached that duty by failing to investigate adequately the background and abilities of its employees it hired, including Defendant LaRocca.  Specifically, Defendant SunTrust breached its duty of care, when it hired employees that were not adept or competent or registered financial advisors, and were not familiar with the rules and regulations of the financial industry as required by law or as a matter of custom within the financial community.

113.    As a result of Defendant SunTrust's breach of its duty to hire and retain only competent and forthright professionals, Plaintiff suffered financial harm the amounts of which are to be proven at trial.

## COUNT XII
### Failure to Warn Against All Defendants

114.    Plaintiff repeats and re-alleges each allegation set forth herein.

115.    Defendants promoted and recommended unsuitable investments and alternative investments, with high-risk and illiquid profiles that were foreseeable to the Defendants at all times but not readily recognizable to an ordinary or lay investor.

116.    Defendants could have reduced or avoided the risk associated with these alternative investments by providing reasonable instructions or warnings to the Plaintiff as well as providing the usual and customary oversight of Plaintiff's investment accounts.

117.   Defendants performed due diligence reviews of LaRocca's investment strategies and Plaintiff's account and discovered multiple "red flags" but failed to advise Plaintiff of these discoveries.

118.   Defendants failed to properly identify the unsuitable and alternative investments Plaintiff's capital had been contributed to and as such, Defendants failed to identify, disclose, and warn the Plaintiff of the risks associated with those particular investments with any degree of specificity.

119.   As a direct and proximate consequence of the Defendants failure to warn the Plaintiff, Plaintiff suffered substantial financial harm and the instantaneous diminution of their capital contributions; a consequence that was not readily apparent or foreseeable to the Plaintiff at any time, especially considering Defendant's misstatements and misrepresentation and ultimate failure to warn the Plaintiff of the risk inherent in these investment vehicles.

120.   Plaintiff's aforesaid losses shall be proven at the time of trial.

## COUNT XIII
### Alternative Derivative Claim Against All Defendants

121.   Plaintiff repeats and re-alleges each allegation set forth herein.

122.   The allegations of this Count are intended in the alternative to the theories of recovery alleged above. These allegations are intended to apply only in the event that the allegations of other Counts are found insufficient and cannot be amended, as a matter of law.

123.   Plaintiff has repeatedly made demands on Defendants for refunds of investments made and Plaintiff's demands have been refused, denied, and rejected, and to the extent any such request has been insufficient to encompass the entire subject matter hereof, it would be useless and futile to attempt any further.

## COUNT XIV
### Professional Negligence/Malpractice

124.   Plaintiff repeats and re-alleges each allegation set forth herein.

125.   Defendants SunTrust, CSI, Taylor & Faust and/or LaRocca were each responsible for investing Plaintiff's account in accordance with Plaintiff's stated conservative investment strategy and each Defendant had an independent duty to exercise proper care, prudence and professional responsibility in handling, managing and investing Plaintiff's money.

126.    Defendants failed to exercise prudence, care and professional responsibility in investing, managing, diversifying, monitoring and safeguarding Plaintiff's investments and assets under their management.

127.    Defendants ignored industry standards, industry literature and numerous red flags associated with the investment strategy employed with respect to Plaintiff's investment accounts and otherwise failed to perform due diligence and review of the investments Defendants placed Plaintiff's into and utterly failed to monitor said investments.

128.    Defendants purposefully concealed and/or were complicit in the concealment of the actual net worth and value of Plaintiff's portfolio such that their actions prevented Plaintiff from knowing his net worth, from investigating his investment account and from altering his lifestyle and spending habits to be commensurate with his actual net worth. Rather, Defendants continued to have Plaintiff invest in unsuitable and high risk investments so that they could reap large commissions, fees and kick-backs all to Plaintiff's financial detriment.

129.    As a direct and proximate result, of Defendants' professional negligence and malpractice Plaintiff basically lost their entire investment accounts, the exact amount of which will be proven at trial.

## JURY DEMAND AND PRAYER FOR RELIEF

130.    Plaintiff hereby demands a trial by jury on all issues.

WHEREFORE, Plaintiff prays for the following relief and judgment against the Defendants individually, jointly, severally and in the alternative:

A.    Rescission of the subscription agreements between Plaintiff and the alternative investment/General Partner, or alternatively, monetary damages restoring Plaintiff to the position he would have occupied had the subscription agreements/ alternative investments never been made, according to proof;

B.    Compensatory Damages for Breaches of Fiduciary Duty;

C.    Disgorgement of management fees, performance fees, costs, other fees and interest paid to Defendants during the relevant time periods;

D.    Punitive Damages for the willful, wanton and fraudulent acts of Defendants;

E.    Monetary judgment against Defendants for an amount equal to the damages each suffered as a result of Defendants actions complained of;

F.      Reasonable attorneys' fees and litigation costs associated with this litigation;

G.     Pre-judgment interest; and

H.     Such other and further relief as the Court deems just and proper.

For the Plaintiff

BY: _____

Andrew M. Smith, Esquire
Counsel for Plaintiff Jaret Wright

# EXHIBIT A



**CSI Capital Management**
Financial Advisors
Investment Counsel

One Montgomery Street
Suite 2525, Telesis Tower
San Francisco, CA 94104
415 / 421-0535
Fax: 415 / 956-3231

November 10, 1997

Mr. and Mrs. Clyde Wright
528 Jeanine
Anaheim, CA 92806

Dear Mr. and Mrs. Clyde Wright,

I want to introduce myself and CSI Capital Management to you and your family.

I was the Los Angeles Dodger's 2nd selection in the 1991 draft, but opted instead to pursue my education and baseball opportunities at Stanford University. Upon graduation I signed with the Baltimore Orioles. While playing professional baseball I utilized the sports agency of Reich, Katz and Landis to represent me in my baseball affairs. Having a continuing dialogue with Craig Landis, it is my understanding that your family may be interested in interviewing a financial firm.

Like Jaret, I was put in a situation where I had to choose an agent and a financial advisor. I felt very strongly about dividing these two roles. However, my decisions on both an agent and a financial advisor were made on a common premise. I respected and trusted the people within each organization and the principles under which they operated. I chose CSI as my financial advisor and, not coincidentally, accepted a position with the firm once my playing days were over.

Because CSI is an independent organization, your family may draw upon various sources for an unbiased opinion of us and our work. Please feel free to contact agents, players, coaches, or even the Major League Player's Association in regards to our firm.

I expect Jaret to continue his success and I hope that CSI can assist him in his financial future. I want to stress the fact that CSI functions as a complete financial advisor. In addition to investment counseling and tax planning, we are involved in daily financial situations to the extent our clients want and/or need our services. These services include, but are not limited to: home purchases, lease obligations, car purchases, bill paying, money wires, and legal matters.

I will call you in order to facilitate a meeting once your family has a chance to recuperate from the season.

Sincerely,

Todd V. LaRocca



**CSI Capital Management**

Financial Advisors
Investment Counsel

One Montgomery Street
Suite 2525, Telesis Tower
San Francisco, CA 94104
415 / 421-0535
Fax: 415 / 956-3231

November 24, 1997

Mrs. Vicki Wright
528 Jeanine
Anaheim, CA 92806

Dear Mrs. Wright,

It was a pleasure speaking with you the other day.

I wanted to let you know that I had an opportunity to play golf with Jaret and Craig Landis last week. I informed Jaret about CSI and the work that we do. Given the appropriate time, I would like the opportunity to meet with your family.

I know that you and Jaret are interested in a financial advisor that plays an active role and one that can handle a multitude of issues. Having athletes as our focused client base, I want to reassure your family that we are more than ready to deal with any financial situation that may develop. As a former player, I can recognize the importance of these matters. CSI is sensitive to these specific needs and has the competence and expertise to ensure that daily matters are provided with enough attention. In addition to our normal staff, CSI has hired three more employees to specifically handle the needs of our clients. For example, we hired a Harvard Law School alum to deal with contract issues ranging from apartment leases to phone bills. In addition, we have experts who handle car and home purchases as well. I also play an integral role in ensuring that all the various needs are handled with the utmost detail.

As Jaret's success continues, his financial situation becomes more complicated. We want to relieve any and all burdens placed upon the growing situation. There are issues, such as specific tax planning, that need to be prepared for in anticipation for future developments.

I want to continue our dialogue and I hope that we can get together in the near future.

Sincerely,

Todd V. LaRocca

# EXHIBIT B

## Financial Advice and Investment Counseling

CSI is a financial advisory firm registered with the Securities and Exchange Commission and various state regulatory agencies. CSI and its affiliates maintain responsibility for more than $300 million in total assets. Each of our client's portfolios is carefully structured according to that client's current financial needs and long-term financial prospects.

Unlike most financial advisors and investment counselors, CSI is entirely independent. To a great extent, those who call themselves financial advisors and counselors are actually brokers or salesmen. They receive a commission or hidden fee for the financial products they sell. These brokers and salesmen have every incentive to recommend products that will pay themselves the highest sales commission. Because of this conflict of interest, we have seen that the interests of the client are not the primary basis for the investments that are often recommended to professional athletes.

CSI charges a flat fee for independent financial advice. Therefore, our recommendations regarding investments are not influenced by any sales commission whatsoever. The clients' best interests are our only objective. Additionally, CSI reviews various financial opportunities that are often presented to our clients. Unfortunately, most of these financial opportunities are ill-conceived "get rich quick" schemes that our clients are counseled to avoid.

## Tax Planning

CSI's legal counsel, Taylor & Faust, is a law firm that specializes in federal and state taxation. Each of our clients is provided with a comprehensive personalized tax plan designed to reduce that client's overall tax liability to the minimum allowed by law. As the combined federal and state tax rate for most players is in excess of 45%, tax planning strategies are extremely important in building net worth. Our tax planning serves as a "profit center" for our clients rather than an expense. It is important to note that this practice of developing comprehensive tax planning strategies is far different from the experience of most professional athletes who simply have their tax returns prepared long after any tax planning opportunities have passed.

## Enclosures

I am enclosing some materials that describe our firm in more detail. In addition, there are some newspaper articles which have featured us and describe our work. I hope you find these materials of interest.

## Conclusion

I hope that this letter and the enclosed materials give you a better understanding of the history of CSI, the services that we provide to our clients, and our general philosophy about sports finance.

# EXHIBIT C



**Career Sports International**
A DIVISION OF CSI CAPITAL MANAGEMENT
Financial Advisors
Investment Counsel

# CAREER SPORTS INTERNATIONAL ®

# REPRESENTATIVE CLIENT LIST



Career Sports International ("CSI") is a specialty firm that provides tax, investment, and overall financial planning strategies for wealthy people. CSI is not a sports agent and does not negotiate contracts. In addition to representing over 100 professional team-sport athletes, CSI and its affiliates represent Olympians, Hall of Famers, team owners, general managers, coaches, writers, entertainers, television and radio personalities, business executives, and foundations. In the past five years, 50 first round draft picks (or over 10 percent of all first round selections) joined CSI for professional advice. Some of our clients are:




| Major League Baseball | National Football League | National Basketball Association |
|---|---|---|
| Dante Bichette | Jeff Burris | Calbert Cheaney |
| John Burkett | Mark Chmura | Dale Davis |
| Travis Fryman | Santana Dotson | Tim Duncan |
| Rickey Henderson | Steve Everitt | Kevin Garnett |
| Darrin Jackson | Mark Fields | Adam Keefe |
| Stefan Karsay | Joey Galloway | Shawn Kemp |
| Mike Kelly | Kevin Hardy | J.R. Rider |
| Paul O'Neill | Garrison Hearst | Detlef Schrempf |
| Jesse Orosco | Antonio Langham | Joe Smith |
| Dean Palmer | Tyrone Poole | Rik Smits |
| Dan Serafini | William Roaf | Bryant Stith |
| Paul Wilson | Bob Whitfield | Nick Van Exel |





We are required by federal securities law to state the following: It is not known whether the listed clients approve or disapprove of the advisor or the advisory services provided.

| LName | FName | Team | Organization | File # |
|-------|-------|------|--------------|--------|
| Hughes | Michael | Anaheim Angels, A Boise | BaseballMinors | 1191 |
| Abbott | Charles | Anaheim Angels, AA Midland | BaseballMinors | 1197 |
| Chavez | Anthony | Anaheim Angels, AAA Vancouver | BaseballMinors | 1253 |
| Murrell | Adrian | Arizona Cardinals | Football | 1236 |
| Whitfield | Bob | Atlanta Falcons | Football | 1202 |
| Orosco | Jesse | Baltimore Orioles | Baseball | 1067 |
| Shepherd | Alvie | Baltimore Orioles, AA Bowie | BaseballMinors | 1168 |
| Ratliff | Craig | Baltimore Orioles, R Bluefield | BaseballMinors | 1199 |
| Sharper, Jr. | Harry | Baltimore Ravens | Football | 1247 |
| Smith | Ryan | Carolina Panthers | Football | 1261 |
| Armstrong, | Benjamin | Charlotte Hornets | Basketball | 1224 |
| Geiger | Matthew | Charlotte Hornets | Basketball | 1155 |
| Burrell | Scott | Chicago Bulls | Basketball | 1219 |
| Miller | Kurt | Chicago Cubs | BaseballMinors | 1256 |
| Snyder | John | Chicago White Sox | Baseball | 1275 |
| Johnson | Mark | Chicago White Sox | BaseballMinors | 1151 |
| Fryman | David | Cleveland Indians | Baseball | 1069 |
| Wright | Jaret | Cleveland Indians | Baseball | 1280 |
| Cruz | Jacob | Cleveland Indians | BaseballMinors | 1137 |
| Karsay | Stefan | Cleveland Indians | BaseballMinors | 1037 |
| Sorensen | Zach | Cleveland Indians, A Watertown | BaseballMinors | 1270 |
| Godfrey | Randall | Dallas Cowboys | Football | 1195 |
| Hutson | Tony | Dallas Cowboys | Football | 1271 |
| Smith | Neil | Denver Broncos | Football | 1260 |
| Stith | Bryant | Denver Nuggets | Basketball | 1089 |
| Van Exel | Nick | Denver Nuggets | Basketball | 1150 |
| Jeffries | Greg | Detroit Lions | Football | 1225 |
| Crowell | Germane | Detroit Lions | Football | 1251 |
| Mantei | Matthew | Florida Marlins | Baseball | 1189 |
| Lee | Derrek | Florida Marlins | Baseball | 1119 |
| Earl | Acie | Free Agent | Basketball | 1125 |
| Coles | Vernell | Golden State Warriors | Basketball | 1222 |
| Marshall | Donyell | Golden State Warriors | Basketball | 1141 |
| Caffey | Jason | Golden State Warriors | Basketball | 1177 |
| Chmura | Mark | Green Bay Packers | Football | 1194 |
| Brown | Jonathan | Green Bay Packers | Football | 1265 |
| Dotson | Santana | Green Bay Packers | Football | 1098 |
| Bergman | Sean | Houston Astros | Baseball | 1188 |
| Davis | Elliot | Indiana Pacers | Basketball | 1218 |
| Smits | Rik | Indiana Pacers | Basketball | 1172 |
| Glenn | Tarik | Indianapolis Colts | Football | 1241 |
| Poole | Tyrone | Indianapolis Colts | Football | 1161 |
| Burris | Jeffrey | Indianapolis Colts | Football | 1207 |
| Lim | Teresa | Investment Client | | 1851 |
| Banks | Charles | Investment Client | | 1853 |
| Keefe | Edmund | Investment Client | | 1814 |
| King | Karen | Investment Client | | 3162 |
| Kleiner | Arnold | Investment Client | | 1825 |
| Krassner | Michael | Investment Client | | 1800 |
| Gilson | Howison | Investment Client | | 1846 |
| Campanelli | Lou | Investment Client | | 1062 |
| Brown | Willie | Investment Client | | 1836 |
| Lippman | Amy | Investment Client | | 1824 |
| Lippman | Shirley | Investment Client | | 3389 |

| | | | | |
|---|---|---|---|---|
| Burkett | Dale | Investment Client | | 1847 |
| Lyons | Marilyn | Investment Client | | 3872 |
| Burkett | Arlette | Investment Client | | 1803 |
| Armstrong | Billie Joe | Investment Client | | 1808 |
| Dutt | Steven | Investment Client | | 1822 |
| Elsea | Veronica | Investment Client | | 3883 |
| Frohwirth | Todd | Investment Client | | 1093 |
| Gold Trust | Mary | Investment Client | | |
| Graiwer | Carol | Investment Client | | 1841 |
| Hall, Jr. | Gary | Investment Client | | 1826 |
| Brenly | Robert | Investment Client | | 1004 |
| Carlisle | Richard | Investment Client | | 1035 |
| Hericks | Steven | Investment Client | | 1834 |
| Johnson | Michael | Investment Client | | 1839 |
| Barry | Richard | Investment Client | | 1029 |
| Inc. | Green Day | Investment Client | | 1809 |
| Cohn | Linda | Investment Client | | 1805 |
| Jacoby, Jr. | Brook | Investment Client | | 1122 |
| Claypool | Leslie | Investment Client | | 1835 |
| Buechele | Steve | Investment Client | | 1076 |
| Hearst | Mary | Investment Client | | 1804 |
| Sackinsky | Brian | Investment Client | | 1091 |
| Taylor | John | Investment Client | | 1033 |
| Tompkins | Barry | Investment Client | | 3957 |
| Velardi | Valerie | Investment Client | | 3619 |
| Pritchard | Michael | Investment Client | | 1806 |
| Stone | Kelly | Investment Client | | 1829 |
| Roth | Jeffrey | Investment Client | | 1829 |
| Stewart | Roderick | Investment Client | | 1852 |
| Webb | Douglas | Investment Client | | 1142 |
| Osofsky | Matthew | Investment Client | | 3872 |
| Osofsky | Alick | Investment Client | | 3872 |
| Swan | Russ | Investment Client | | 1048 |
| Whitson | Eddie | Investment Client | | 1008 |
| Patrick | Daniel | Investment Client | | 1840 |
| Miner | Harold | Investment Client | | 1092 |
| Skinner | Michael | Investment Client | | 1843 |
| Zerrillo | Michael | Investment Client | | 1832 |
| Scott | Chase | Investment Client | | 1845 |
| Wright | Frank | Investment Client | | 1807 |
| Sonefeld | James | Investment Client | | 1837 |
| Minton | Greg | Investment Client | | 1010 |
| Morissette | Alanis | Investment Client | | 1842 |
| Murray | Yachiko | Investment Client | | 1844 |
| Negron | Taylor | Investment Client | | 1848 |
| Woodson | Elisabeth | Investment Client | | 1801 |
| Hardy | Kevin | Jacksonville Jaguars | Football | 1178 |
| Wynn | Renaldo | Jacksonville Jaguars | Football | 1231 |
| Williams | Robert | Kansas City Chiefs | Football | 1273 |
| George | Ronald | Kansas City Chiefs | Football | 1113 |
| Palmer | Dean | Kansas City Royals | Baseball | 1154 |
| Whisenant | Matt | Kansas City Royals | Baseball | 1255 |
| Smith | Matthew | Kansas City Royals, A Lansing | BaseballMinors | 1135 |
| Robinson | James | Los Angeles Clippers | Basketball | 1245 |
| Closs, Jr. | Keith | Los Angeles Clippers | Basketball | 1242 |
| Piatkowski | Eric | Los Angeles Clippers | Basketball | 1147 |

| | | | | |
|---|---|---|---|---|
| Lue | Tyronn | Los Angeles Lakers | Basketball | 1258 |
| Shannon | Larry | Miami Dolphins | Football | 1263 |
| Jackson | Darrin | Milwaukee Brewers | Baseball | 1072 |
| Kirkreit | Daron | Milwaukee Brewers, AA El Paso | BaseballMinors | 1117 |
| Pine | Chris | Milwaukee Brewers, R Ogden | BaseballMinors | 1267 |
| Garnett | Kevin | Minnesota Timberwolves | Basketball | 1228 |
| Serafini | Daniel | Minnesota Twins | Baseball | 1087 |
| Miller | Travis | Minnesota Twins | BaseballMinors | 1143 |
| Williams | Maurece | Minnesota Vikings | Football | 1184 |
| Arthurs | Donald | Montreal Expos, A Vermont | BaseballMinors | 1276 |
| May | Derrick | Montreal Expos | BaseballMinors | 1099 |
| Rutledge | Rodrick | New England Patriots | Football | 1272 |
| Fields | Mark | New Orleans Saints | Football | 1166 |
| Hobert | Billy Joe | New Orleans Saints | Football | 1223 |
| Roaf | William | New Orleans Saints | Football | 1204 |
| Barber | Atlim | New York Giants | Football | 1232 |
| Wheatley | Tyrone | New York Giants | Football | 1170 |
| Farrior | James | New York Jets | Football | 1239 |
| Camby | Marcus | New York Knicks | Basketball | 1190 |
| Wilson | Paul | New York Mets | Baseball | 1144 |
| O'Neill | Paul | New York Yankees | Baseball | 1094 |
| Singleton | Chris | New York Yankees, AAA Columbus | BaseballMinors | 1120 |
| Jones | Charles | No Team | Basketball | 1279 |
| Adams | Willie | Oakland Athletics | BaseballMinors | 1116 |
| Henderson | Rickey | Oakland Athletics | Baseball | 1248 |
| Thomas | Irving | Pallacanestro Trieste | Basketball | 1054 |
| Smith | Joseph | Philadelphia 76ers | Basketball | 1174 |
| Thomas, III | William | Philadelphia Eagles | Football | 1266 |
| Everitt | Steve | Philadelphia Eagles | Football | 1212 |
| McDyess | Antonio | Phoenix Suns | Basketball | 1257 |
| Adams | Michael | Pittsburgh Steelers | Football | 1243 |
| Johnson | Charles | Pittsburgh Steelers | Football | 1259 |
| Gildon | Jason | Pittsburgh Steelers | Football | 1249 |
| O'Neal | Jermaine | Portland Trail Blazers | Basketball | 1196 |
| Rider | Isaiah | Portland Trail Blazers | Basketball | 1126 |
| Chorak | Jason | Saint Louis Rams | Football | 1277 |
| Duncan | Timothy | San Antonio Spurs | Basketball | 1234 |
| Hearst | Garrison | San Francisco 49ers | Football | 1213 |
| Langham | Antonio | San Francisco 49ers | Football | 1214 |
| Smith | Irvin | San Francisco 49ers | Football | 1205 |
| Mayne | Brent | San Francisco Giants | Baseball | 1268 |
| Rueter | Kirk | San Francisco Giants | Baseball | 1254 |
| Brock | Tarrik | Seattle Mariners, AAA Tacoma | BaseballMinors | 1071 |
| Lorraine | Andrew | Seattle Mariners | BaseballMinors | 1121 |
| Abbott | Paul | Seattle Mariners | BaseballMinors | 1084 |
| Galloway | Joey | Seattle Seahawks | Football | 1165 |
| McCoy | Jelani | Seattle SuperSonics | Basketball | 1264 |
| Schrempf | Detlef | Seattle SuperSonics | Basketball | 1173 |
| Barber | Jamael | Tampa Bay Buccaneers | Football | 1229 |
| Rolle | Samari | Tennessee Oilers | FOOTBALL | 1274 |
| Burkett | John | Texas Rangers | Baseball | 1047 |
| Nowlin | Coleman | Texas Rangers, R Port Charlotte | BaseballMinors | 1269 |
| Billups | Chauncey | Toronto Raptors | Basketball | 1252 |
| Wallace | John | Toronto Raptors | Basketball | 1167 |

| McGrady | Tracy | Toronto Raptors | Basketball | 1230 |
|---|---|---|---|---|
| Slater | Reginald | Toronto Raptors | Basketball | 1262 |
| Keefe | Adam | Utah Jazz | Basketball | 1201 |
| Eisley | Howard | Utah Jazz | Basketball | 1244 |
| Wiggins | Paul | Washington Redskins | Football | 1240 |
| Connell | Albert | Washington Redskins | Football | 1250 |
| Weldon | Casey | Washington Redskins | Football | 1149 |
| Cheaney | Calbert | Washington Wizards | Basketball | 1115 |

# EXHIBIT D

TAYLOR & FAUST
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
SUITE 2525, TELESIS TOWER
ONE MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

LELAND H. FAUST
STEVEN B. KRAVITZ
STEPHEN E. CLARK

SAMUEL TAYLOR
[1906-1995]

TELEPHONE
[415] 421-9535

FAX
[415] 956-3231

# Leland H. Faust

## Certified Specialist, Taxation Law,
## The State Bar of California Board of Legal Specialization

---

## EDUCATION

**Legal:**
Harvard Law School, J.D., *cum laude*, 1971

Instructor, United States Income Taxation - International Tax Program
Harvard Law School

**Undergraduate:**
University of California, Berkeley, A.B. 1968
Phi Beta Kappa - 1967
Great Distinction in General Scholarship
Distinction in Honors Program in Major (Economics)
Recipient of NCAA Postgraduate Scholarship
Member of Varsity Swimming and Water Polo Teams

## SELECTED LEGAL PUBLICATIONS, LECTURES, ETC.

Co-author of *Personal Tax Planning For Professionals And Owners Of Small Businesses* (Book published by California Continuing Education of the Bar)

Co-author of *Tax Accounting:  Certain Payments To Related Taxpayers Must Be Made By March 15 To Be Deductible*, 3 *Taxation for Lawyers* 252

Guest Lecturer, Hastings College of Law
(Subject:  Tax Aspects of Partnership Syndications).

Speaker for California Continuing Education of the Bar Program on *"Drafting California Wills After Tax Reform"*

Speaker for California Continuing Education of the Bar Program on
"*Organizing Partnerships*"

Speaker for California Continuing Education of the Bar Program on
"*Individual Ownership and Disposition of Substantial Properties*"

Speaker for California Continuing Education of the Bar Program on
"*Buy-Out Agreements for California Businesses*"

Speaker for California Continuing Education of the Bar Program on
"*Organizing, Operating, and Terminating Closely Held Corporations*"

Speaker for California Continuing Education of the Bar Program on
"*How To Draft Wills After ERTA*"

## EMPLOYMENT

| | | |
|---|---|---|
| 1971-1975 | **Taylor, Winokur & Schoenberg** | |
| | Associate in law firm specializing in taxation law. | |
| 1975-Present | **Taylor & Faust** | |
| | Partner in law firm specializing in taxation law. | |

## MEMBERSHIPS

**Member:**   Tax Section of the American Bar Association
California State Bar
San Francisco Bar Association.

**Fellow:**   American Bar Foundation

## SPORTS ADVISORY FIRM

1978-Present   **Career Sports International**
President
1994   Named by The Sporting News to List of 100 Most Powerful
People in Sports Industry

# EXHIBIT E

11/19/2009 14:18 FAX 415 956 3233          CSI CAPITAL MANAGEMENT                            ☒001



**CSI Capital Management®**

600 California Street, 18th Floor
San Francisco, CA 94108-2711
415 / 354-2000
Fax: 415 / 956-3291

November 9, 2009

Jaret Wright
23 Calle Viviana
San Clemente, CA 92673

    Re:    <u>Transaction between CSI Capital Management, Inc. and SunTrust Bank</u>

Dear Jaret:

We are pleased to announce that CSI Capital Management, Inc. ("CSI") has signed an asset purchase agreement with SunTrust Bank ("SunTrust"), headquartered in Atlanta, Georgia, pursuant to which SunTrust will make a strategic acquisition of the division of our business handled by Todd LaRocca.

We anticipate that the completion of this transaction will occur on or before November 30, 2009, subject to the satisfaction or waiver of various closing conditions specified in the asset purchase agreement. We understand that, as before, Todd will continue to be directly responsible for your account. A description of SunTrust's wealth management capabilities and service model can be found at www.SunTrust.com. Todd has committed to a multi-year employment contract with SunTrust.

The acquisition by SunTrust of the CSI division requires the assignment of your investment advisory and/or management services agreement(s) with CSI to SunTrust. Those agreements and the rules governing registered investment advisers require your consent in order to assign investment advisory and other service responsibilities to SunTrust. Also, obtaining consents from clients whose agreements are being assigned to SunTrust is a closing condition to the transaction. In addition, due to certain regulatory requirements, SunTrust also would like to get your permission to (1) share information with your tax accountant, and (2) deliver certain documents electronically, such as SunTrust's privacy policy and periodic notices and reports.

You are asked to acknowledge and agree to the following as part of your consent to the assignment:

- The assignment is limited to financial and tax planning and investment advisory or counseling services. SunTrust is not assuming any responsibility for the provision of legal services.

- Due to the fact that CSI, who will continue to serve as investment adviser to CSI Mutual Funds, is not affiliated with SunTrust and SunTrust will not share in fund-level management fees on CSI Mutual Funds, you will no longer receive a reduction of the investment advisory fee based upon your account holdings in CSI Mutual Funds.

11/19/2009 14:16 FAX 415 956 3233          CSI CAPITAL MANAGEMENT                    ☒002
      Nov 19 2009 1:21PM    Wright                      9492187263                     p.1

- On the effective date of the assignment of your investment advisory and/or management services agreement(s) to SunTrust, your contractual relationship with CSI will terminate and CSI will no longer be responsible for providing those services to you. Note that for certain clients, and with the consent of SunTrust, CSI may continue to provide (i) investment advisory services on a sub-advisor basis to you with respect to large capitalization domestic equity or developed country non-United States equity strategies and (ii) bill paying services for some clients for a period of time after the effective date of the closing.

- If you have been receiving legal services from Taylor & Faust P.C. in connection with your services agreement with CSI, note that as of the effective date of the closing of the assignment to SunTrust of your services agreement, Taylor & Faust P.C. will no longer provide such legal services to you.

Please indicate by signing below your consent to (1) the assignment of your advisory or services agreement(s) to SunTrust, (2) the sharing by SunTrust of confidential information with your tax accountant for purposes of the accountant filing a correct and complete income tax return and facilitating the provision of other tax related services to you, (3) the delivery by SunTrust of reports and other communications to you electronically, and (4) the bullet point items in the immediately preceding paragraph. If you have any questions as we move through the transaction process, please do not hesitate to communicate with us.

Sincerely,                                              Sincerely,

Leland Faust                                            Todd LaRizza

CSI Capital Management

Consented and Agreed to by:

Jaret Wright

Date:_____11/19/09_____

# EXHIBIT F

# AGREEMENT - FINANCIAL SERVICES

*THIS AGREEMENT*, dated 11/01/03, is made and entered into by and between CSI Capital Management, Inc. ("CSI"), Taylor & Faust, A Professional Corporation ("T&F"), and Jaret Wright ("Client").

1.      Client hereby retains CSI to provide tax planning, financial advisory and investment counseling services. CSI agrees to perform such services for Client. Client engages T&F to render legal services that are reasonably required to represent Client in the performance of tax planning, tax compliance, and financial advisory services. T&F agrees to perform such services.  The services provided under this Agreement do not include remedial work (attending to matters arising from events that occurred or contracts entered into before the date of this Agreement).

2.      It is agreed that the services to be provided by CSI under this Agreement do not include contract negotiations or merchandising or other services customarily provided by agents (obtaining personal appearances, endorsements, or other promotional activities) for Client.

3.      This Agreement shall continue until terminated either by Client or CSI for any reason.  If either party desires to terminate this Agreement, it shall give the other party notice of termination, which shall fix the effective date of termination.

4.      In the event this Agreement shall be terminated for any reason at any time other than on the anniversary date of the contract, CSI shall be entitled to a pro rata portion of its fee, based upon the number of months of representation until the date of termination.

5.      For tax planning and financial advisory services, CSI's compensation, beginning upon the date of the Agreement, shall be 1.50% of Client's gross annual compensation from his primary employment contract but in no case shall be less than $20,000 or greater than $50,000.  For investment counseling services, CSI's annual fee shall be 1.0% of the value of assets under management less than $5 Million; 0.75% of the value of assets under management between $5 million and $10 million; and 0.5% of the value of the assets under management over $10 million. Bill paying services will be provided to Client for a fee of $300 per month. The investment counseling fees shall be payable quarterly in arrears at the end of each calendar quarter based on the average of the net market values of the Account at the close of trading on the last business day of the three preceding months. (For example, the fee for the first quarter of 2003 would be based on the average net of the market values of the account on December 31, 2002, January 31, 2003 and February 28, 2003.)

6.      All notices hereunder shall be in writing.

7.      Client gives CSI the authority and discretion to supervise and direct the investments of all of Client's accounts maintained by CSI on Client's behalf with any brokerage firm, subject to such limitations as Client may impose by notice in writing.  CSI, as agent and attorney-in-fact with respect to such accounts, may, when deemed appropriate by CSI and without prior consultation with Client, (a) buy, sell, exchange, convert, and otherwise trade in any stocks, bonds, and other securities, and (b) place orders for the execution of such securities transactions with or through such brokers, dealers, or issuers as CSI may select.  Unless Manager otherwise agrees in writing, Manager will not have any duty or obligation to advise or take any action on behalf of Client in any legal proceedings, including bankruptcies or class actions, involving Securities held in or formerly held in the Account or the issuers of Securities. Included in the authority provided in this paragraph, CSI may use its discretion hereunder to invest all or a portion of Client's accounts in shares of investment companies advised or managed by CSI or one of its affiliates ("CSI Mutual Funds"). Although CSI will receive compensation for its services to each CSI Mutual Fund, which compensation is specified in the disclosure documents that Client has or will receive regarding that CSI Mutual Fund, CSI shall reduce any asset based fee payable under this Agreement by an amount equal to the compensation received by CSI with respect to any assets in any Client account invested in CSI Mutual Funds.  CSI has a conflict of interest with Client regarding CSI's decision to invest Client's accounts in CSI Mutual Funds, and by signing this Agreement, Client represents that Client has made Client's own independent decision that investment of all or a portion of Client's accounts in CSI Mutual Funds is appropriate.

8. Except as required by law or requested by regulatory authorities, (a) CSI agrees to maintain in strict confidence all personal and financial information regarding Client that is furnished to CSI by Client (except that Client consents to disclosure of Client's identity as a client of CSI and to disclosure of all personal and financial information about Client in connection with services provided by CSI to Client, including to insurance agents, brokers, companies, financial institutions, accounting firms, lending institutions, mortgage brokers, and any other financial service providers); and (b) Client agrees to maintain in strict confidence all investment advice and information furnished to Client by CSI. Client acknowledges receipt of Manager's Notice of Privacy Policy, which is included in Part II of Manager's Form ADV.

9. This Agreement contains all agreements of the parties with respect to any matters mentioned herein and supersedes all prior negotiations, understandings and agreements by and between the parties hereto. This Agreement may not be altered, amended or modified in any manner whatever, excepting only by subsequent written agreement.

10. This Agreement shall be interpreted in accordance with the laws of the State of California. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under the applicable law, but if any provisions of this Agreement shall be prohibited by or invalid under applicable law, such provisions shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

11. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective successors, assigns, heirs and personal representatives, provided, however, that CSI shall not assign its interest in this Agreement without the consent of the Client, if and to the extent that such consent is required under the Investment Advisers Act of 1940, as amended, and the rules and regulations thereunder.

**CSI Capital Management, Inc.**

Client: Jaret Wright

Date: 11/21/03

By _____
445 Bush Street, 5th Floor
San Francisco, CA 94108-3725

Taylor & Faust, A Professional Corporation

By _____

# EXHIBIT G

August 17, 2012

Andrew M Smith, Esquire
Smithbridge, LLP
Two Penn Center
1500 JFK Blvd., Suite 900
Philadelphia, PA 19102

Dear Mr. Smith:

It has come to my attention that you represent some individuals that have filed a lawsuit against
SunTrust Banks. I have some knowledge with regard to SunTrust that may help you with your case. I am
writing to you anonymously because I don't want to be dragged into it, but my information is easily
verifiable once you know what you are looking for.

SunTrust has significant exposure, in my opinion, because it employs "Financial Advisors" that operate
without any licenses whatsoever. Currently, Todd LaRocca, Jeff Neumann and Adam Fine all are the sole
points of contact for their clients, but carry no licenses and have not for some time. The Bank will argue
that they don't work for the Wealth Management Company, but rather are employees of the Bank.
However, all three of the individuals listed above work for the Bank in states where the Bank has no
charter. LaRocca and Fine are in California and Neumann is in Illinois. All three of them commit
securities violations every day by providing financial advice for a fee without holding a license. LaRocca
was licensed previously, but has not been licensed since 2010. This licensing information can be easily
verified through the SEC or state regulating agencies. SunTrust will not want it to get out to its clients
that these three individuals do not carry any professional licenses.

The enormous piece of information that you currently do not possess however, is what will get you a
favorable settlement for your clients. Todd LaRocca has done some things, both at CSI Capital
Management and at SunTrust that makes whatever Billy Crafton did look like a parking ticket. SunTrust
and CSI do not want this information public, because it not only shows a failure to supervise LaRocca,
but it also shows a cover up and wrong doing by both CSI and SunTrust.

After you read this, spend a half a day on the internet following up on this series of events.

LaRocca was college roommates with his good friend, Jason Sugarman. Sugarman was from a
prominent Southern California Family. Sugarman went to work for a guy named Michael Abraham at a
company called MKA Capital Advisors. MKA created funds which loaned money to real estate
developers, among other things. LaRocca went to work at CSI Capital Management (and later SunTrust)
recruiting and managing money for several prominent professional baseball players.

LaRocca, while at CSI, funneled millions of dollars of his clients' money to MKA Funds. In exchange for
LaRocca sending his clients' money to MKA, LaRocca received significant benefits from MKA without
disclosing those benefits to his clients. Among the benefits LaRocca received were discounted prices on
real estate (The Crosby in Rancho Sante Fe, CA and a condominium in Lanai, HI). Both projects were
financed by the very MKA funds that LaRocca's clients were backing. MKA, Sugarman and LaRocca are
closely tied with two people that developed land and borrowed money from the MKA funds: Luis

Trujillo and George Alvarez. Alvarez and Trujillo took Sugarman and LaRocca on numerous vacations and provided them with extensive benefits. Trujillo and Alvarez owned California Cove Communities, LLC, which developed the Crosby, the same development that LaRocca's home is in. It is well chronicled and documented how much trouble Trujillo and Alvarez are in. Sugarman and MKA have been sued in court by at least ten plaintiffs. Sugarman has judgments against him related to his MKA funds. None of LaRocca's clients were made aware that there were potential legal remedies. Some still believe they are getting their money back. Most were told the investment was struggling and they should just turn the page. All of this has been told to clients by their unlicensed advisor, Todd LaRocca. One CSI client that LaRocca had invest money into the MKA fund was Wally Lubanski, a Pennsylvania resident and father to Chris Lubanski. The Lubanskis realized what was happening in MKA and complained to CSI. CSI bought Lubanski out of his investment in MKA to keep him quiet. This buyout was preferential treatment and was not made available to other clients. Also, it occurred after the SEC had frozen the assets in this particular MKA fund. These are very serious securities violations. So clients that figured out what was going on were bailed out and those that didn't were intentionally kept in the dark.

The SEC is currently investigating MKA and all of its dealings, including those with LaRocca.

LaRocca lost money personally in MKA. In exchange for his losses, he was given options on a bank stock from a Southern California Bank that was about to go public, called PacWest Bancorp. LaRocca created a separate entity called Blue Eyes Enterprises, LLC to own the options and eventually the shares. The strike price on the options was $11 per share and the stock went public at $14 per share. The biggest financial backers of PacWest Bancorp were the Sugarman Family, LaRocca's long-time friends. LaRocca utilized insider information on the stock to gain personally, an obvious securities violation. LaRocca let his clients lose all their principal in MKA while LaRocca was either given the options as commission for selling the MKA fund or for losing money in the fund. Both are securities violations that SunTrust and CSI do not want to be discovered.

LaRocca sent many clients to the MKA funds, but some of the most prominent LaRocca clients are:

Russell Branyan (Agent is ACES)
Mike Sweeney (ACES)
Matt Mantei (Bob Garber)
Derek Lee (Casey Close)
Jeff Francis (Jim Lindell)
Raul Ibanez (ACES)
Dan Haren (CAA-Greg Landry)
Joey Votto (Dan Lozano)
Matt Kemp (Dave Stewart)
Jaret Wright (Craig Landis)

I have always been amazed at how a company the size of SunTrust could be so sloppy with its employees. It would be pretty easy to prove several SEC violations. Call all of the agents above and ask them whether their clients know what happened with MKA. None of them will know anything but the investment is struggling.

The leverage for you is that SunTrust will not want to risk this becomes public. Votto, Haren and Kemp alone will have over $300 million collectively under management within the next seven years. Lee is a $35 million client. So is Sweeney. Francis and Wright both have over $10 million. The potential losses

of current clients are damaging, but the loss of future business would be staggering to their sports and entertainment division. I think this is where you dig in. The relevance is that CSI and SunTrust don't supervise and have unlicensed employees giving advice. You can also point to some serious securities violations.

Oh, by the way, LaRocca and Sugarman can also be closely tied to Matt Jennings and Westmore.

Good luck.